IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

:

SHANA MINCEY, Personal
Representative of the Estate of :
Nicholas Keys

:
                                    Civil Action No. DKC 22-0279
        v.                         :

:

STATE FARM INSURANCE COMPANY

:

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this insurance case is the motion for summary judgment and for judgment on the pleadings[1] filed by Defendant State Farm Insurance Company ("State Farm" or "Defendant").[2]  (ECF No. 41).  The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motion will be granted.

---

[1] Defendant's motion was filed as a motion for summary judgment as to Count I and a motion for judgment on the pleadings as to Counts II and III, but Plaintiff has since abandoned Counts II and III, and those counts will be dismissed.

[2] Defendant notes that its actual name is State Farm Mutual Automobile Insurance Company.  (ECF No. 41-1, at 1).

I.    **Background**

    A.    **The Incident**

Unless noted otherwise, the following facts are not in dispute.[3]  On June 4, 2018, Sterling Davis and Nicholas Keys drove in separate cars to the Bowie Town Center parking lot.  (ECF No. 41-7, at 8-9).  They ate at Olive Garden and then went to Dollar Tree to buy some things before returning to their cars, which were parked next to each other.  Mr. Keys' car was to the right of Mr. Davis'.  (ECF No. 41-7, at 9-11).

As both men moved toward the driver's sides of their respective cars, Mr. Davis noticed that the passenger door of the car parked to the left of his was open, bumping the driver's door of his own car.  (ECF No. 41-7, at 11-12).  Mr. Davis observed a woman sitting in the passenger seat of the car and a man sitting in the driver's seat.  (ECF No. 41-7, at 11-12, 15).  The woman was Tanesha Byrd, and the man was Ms. Byrd's boyfriend, Thomas Freddie Hughes.  (ECF No. 41-7, at 113).  The car belonged to Ms. Byrd, and the couple had been sitting in the parked car for up to five minutes at that point, preparing to smoke.  (ECF No. 41-7, at

---

[3] The parties agreed that they would base their "Statements of Material Facts Not in Dispute" on the testimony of Sterling Davis, Kobey Garrett, James Brisker, and Thomas Freddie Hughes in *State of Maryland v. Thomas Freddie Alphonso Hughes*, and the subsequent guilty plea.  (ECF Nos. 39, at 2; 41-6; 41-7; 41-8; 41-10).  The parties did not engage in any additional discovery.  Thus, the facts discussed in this opinion are taken from that material.

13, 115).  Mr. Davis told Ms. Byrd that her door had damaged his door, and she apologized and offered to exchange contact information.  (ECF No. 41-7, at 12).  They exchanged information, and Mr. Davis took a picture of her license plate.  (ECF No. 41-7, at 12-13, 116).  Mr. Davis then got into his car, and Ms. Byrd shut her door.  (ECF No. 41-7, at 14, 116).

Shortly thereafter, Mr. Keys approached Ms. Byrd's car and knocked on the passenger door window.  (ECF No. 41-7, at 14).  Mr. Keys said something to the effect of "what's your problem?", although it is disputed whether he used an expletive to describe Ms. Byrd.  (ECF No. 41-7, at 14, 37, 118).  In response, Mr. Hughes exited the vehicle and moved toward Mr. Keys, telling him not to "disrespect [his] girl."  (ECF No. 41-7, at 15, 118).  Mr. Keys moved away from Mr. Hughes and toward the trunk of his own car, where he retrieved a baseball bat.  (ECF No. 41-7, at 15-16, 40, 118-120).  Mr. Hughes then moved toward the back side of Mr. Keys' car, where he wrestled the bat out of Mr. Keys' hand.  (ECF No. 41-7, at 16, 119-121).  Meanwhile, Mr. Davis and Ms. Byrd exited their respective vehicles, and Ms. Byrd retrieved her own baseball bat from her car.  (ECF No. 41-7, at 16-17, 134).  Mr. Hughes threw Mr. Keys' bat away and then punched Mr. Keys in the face twice.  (ECF No. 41-7, at 17-19, 121-123).  Mr. Keys fell to the ground and hit his head.  (ECF No. 41-7, at 20).  He later died from his injuries.  Mr. Hughes was convicted of voluntary manslaughter and

second-degree assault, but the conviction was reversed and the case remanded for a new trial. (ECF Nos. 41-8, at 3-4; 41-10, at 2). Mr. Hughes subsequently pleaded guilty to manslaughter. (ECF No. 41-10, at 2).

**B. The Insurance Policy**

The Second Amended Complaint alleges that Mr. Keys was covered at the time of his death as a "resident relative" under four State Farm automobile insurance policies: a policy issued to his grandmother, two policies issued to his aunt Shana Mincey, and a policy issued to his great-grandmother. (ECF No. 32, at 2-3). Those policies provide "Uninsured Motor Vehicle Coverage" and "No-Fault Coverage," among other benefits, to resident relatives of people insured under the policy. (ECF No. 41-2, at 25-32). The Uninsured Motor Vehicle ("UM") policy provides:

> We will pay compensatory damages for bodily injury and property damage an insured is legally entitled to recover from the owner or driver of an uninsured motor vehicle. The bodily injury must be sustained by an insured. *The bodily injury and property damage must be caused by an accident arising out of the ownership, maintenance, or use of an uninsured motor vehicle as a motor vehicle.*

(ECF No. 41-2, at 29 (emphasis added)). The No-Fault Personal Injury Protection ("PIP") policy provides: "We will pay benefits owed to an insured in accordance with the No-Fault Act for medical expenses, loss of income, and essential services that result from

4

bodily injury to an insured caused by a motor vehicle accident."
(ECF No. 41-2, at 26).

On March 8, 2021, Plaintiff Shana Mincey, as personal
representative of Mr. Keys' estate, submitted a claim to State
Farm for UM benefits based on the incident that occurred on June
4, 2018. (ECF No. 41-11). On April 7, 2021, she submitted a claim
for No-Fault Personal Injury Protection PIP benefits. (ECF No.
41-12). On September 10, 2021, Defendant notified Plaintiff that
her UM claim was denied because "[t]he injuries sustained by Mr.
Keys did not arise from the ownership, maintenance, or use of an
uninsured motor vehicle as set forth in the policy and applicable
statute." (ECF No. 41-13). On October 1, 2021, Defendant notified
Plaintiff that her PIP claim was denied because Mr. Keys' "injuries
were sustained in an altercation" and "did not arise from a motor
vehicle accident." (ECF No. 41-14).

C. **Procedural History**

Plaintiff Shana Mincey, as personal representative of Mr.
Keys' estate, filed this lawsuit on October 4, 2021, in the Circuit
Court for Prince George's County, Maryland. (ECF No. 1-2, at 2).
Defendant removed the case to this court on February 2, 2022. (ECF
No. 1). Plaintiff filed two amended complaints. The Second
Amended Complaint contains three claims: a breach of contract claim
based on the denial of the UM and PIP claims (Count I), a "bad
faith" claim (Count II), and a claim for punitive damages (Count

III).  (ECF No. 32).  On January 13, 2023, Defendant filed a motion for summary judgment as to Count I and for judgment on the pleadings as to Counts II and III.  (ECF No. 41).  Plaintiff opposed, and Defendant replied.  (ECF Nos. 42, 45).

In her opposition brief, Plaintiff "withdraws [her] claim for PIP coverage pursuant to th[e] summary judgment motion."  (ECF No. 42, at 12).  She also states that she "will withdraw" her punitive damages claim "as it relates to the summary judgment motion" and presents no response to Defendant's arguments that punitive damages are unavailable to Plaintiff, but she seeks to "reserve[] the right to present this matter at trial."  (ECF No. 42, at 12). She presents no response to Defendant's argument that judgment should be entered on the pleadings in its favor as to Count II because Maryland does not recognize a common law tort of "bad faith" by an insured against his insurer and Plaintiff has not properly pled a statutory lack of good faith claim.  (ECF No. 41-1, at 18 (citing *Johnson v. Fed. Kemper Ins. Co.*, 74 Md.App. 243, 248 (1988); Md. Code Ann., Ins. § 27-1001; Md. Code Ann., Cts. & Jud. Proc. § 3-1701).  Defendant's argument appears well-taken, and in any event, a plaintiff who fails to respond to an argument raised in a dispositive motion is deemed to have abandoned the claim.  *See Rodgers v. Eagle All.*, 586 F.Supp.3d 398, 448 (D.Md. 2022); *see also Ferdinand-Davenport v. Child.'s Guild*, 742 F.Supp.2d 772, 777 (D.Md. 2010).  Thus, Defendant's motion will be

granted as to Counts II and III and as to the PIP claim portion of Count I.  What remains is Defendant's motion for summary judgment as to Plaintiff's sole remaining claim: breach of contract based on the denial of the UM claim.

## II.  Standard of Review

Parties "may file a motion for summary judgment at any time until 30 days after the close of all discovery."  Fed.R.Civ.P. 56(b).  Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *See E.I. du Pont De Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011).  A court may, however, grant summary judgment without allowing an opportunity for discovery "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment."  *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995).  Here, Plaintiff has not requested an opportunity for discovery.

A court may grant summary judgment if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  The court must "view the evidence in the light most favorable to . . . the nonmovant[.]"  *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).

### III. Analysis

Under the terms of the State Farm Uninsured Motorist Coverage policy, State Farm is obligated to pay compensatory damages to a policyholder if the following elements, simply stated, are met: (1) the insured, the insured's resident relative, or a person occupying the insured's car (2) sustained bodily injury or property damage (3) from an accident (4) that arose out of the ownership, maintenance, or use (5) of an uninsured motor vehicle (6) for which the injured party is legally entitled to recover damages from the owner or driver of the uninsured motor vehicle (7) and no exclusions or limitations apply.   (ECF No. 41-2, at 28-29). Plaintiff contends that Mr. Hughes was the driver of an uninsured motor vehicle and that Defendant is obligated to pay compensatory damages for Mr. Keys' death because Mr. Keys, as Plaintiff's resident relative, sustained a bodily injury from the June 4 incident, which arose from the use of an uninsured motor vehicle.

Defendant moves for summary judgment on the UM breach of contract claim based on Plaintiff's inability to satisfy elements three and four.[4]  It argues that (1) Keys' bodily injury was caused by an intentional act and not an accident, and (2) Keys' injuries

---

[4] Plaintiff preemptively responds to a third argument—which does not appear in Defendant's motion but appears in its reply—that Plaintiff cannot satisfy the sixth element. (ECF Nos. 42, at 4; 45, at 8-9).  It is unnecessary to reach this argument because Defendant's second argument is successful and dispositive of the claim.

did not arise out of the "use" of an uninsured motor vehicle.[5] (ECF No. 41-1, at 15).  Defendant does not provide much support for its first argument.  Indeed, case law supports a conclusion that Mr. Keys' death may have been the result of an "accident" for the purposes of the State Farm policy.  *See Harleysville Mut. Cas. Co. v. Harris & Brooks, Inc.*, 248 Md. 148, 151-52 (1967) ("[T]he fact that an injury is caused by an intentional act does not preclude it from being caused by accident if in that act, something unforeseen, unusual[,] and unexpected occurs which produces the result."); *see also Pa. Nat'l Mut. Cas. Ins. Co. v. City Homes, Inc.*, 719 F.Supp.2d 605, 613 (D.Md. 2010).

Even if Plaintiff can avoid summary judgment based on Defendant's first argument, however, she cannot avoid summary judgment based on its second.  Maryland courts have interpreted "ownership, maintenance, or use" clauses in automobile liability policies to "require a showing of causal relationship" between the ownership, maintenance, or use of the car and the injury, although "recovery is not limited to the strict rules developed in relation to direct and proximate cause."  *See Nat'l Indem. Co. v. Ewing*, 235 Md. 145, 149 (1964); *see also McNeill v. Md. Ins. Guar. Ass'n*,

---

[5] Plaintiff did not contend in her complaint that the injury arose from the "ownership" or "maintenance" of the uninsured motor vehicle.  In fact, it is established that Ms. Byrd, and not Mr. Holmes, owned the vehicle that Mr. Holmes had been driving. (ECF No. 41-7, at 13).

48 Md.App. 411, 416-17 (1981).  The Supreme Court of Maryland has endorsed the following rule statement in cases involving the question of whether an injury arose out of the *use* of a car:

> [W]here a dangerous situation causing injury is one which arose out of or had its source in, the *use* or operation of the automobile, the chain of responsibility must be deemed to possess the requisite articulation with the *use* or operation until broken by the intervention of some event which has no direct or substantial relation to the *use* or operation,-which is to say, that the event which breaks the chain, and which, therefore, would exclude liability under the automobile policy, must be an event which bears no direct or substantial relation to the *use* or operation; and until an event of the latter nature transpires the liability under the policy exists.

*See State Farm Mut. Auto. Ins. Co. v. DeHaan*, 393 Md. 163, 178 (2006) (quoting *Merchs. Co. v. Hartford Accident & Indem. Co.*, 187 Miss. 301, 301 (1939)); *see also Ewing*, 235 Md. at 149-50 (quoting the same).

In *DeHaan*, the court considered a case in which a man was shot by someone who stole his car.  Mr. DeHaan had parked his car at a gas station and gone inside the convenience store, but when he returned to his car, he found a stranger sitting in the driver's seat.  *Dehaan*, 393 Md. at 167.  Mr. DeHaan opened the driver's door to confront the stranger, and in response, the stranger shot Mr. DeHaan, started the car, and drove away.  *Id.*  The question before the court was whether Mr. DeHaan's injuries arose out of

10

the use of an uninsured motor vehicle—language used in both the Insurance Article of the Maryland Code and the State Farm policy belonging to Mr. DeHaan.  The court applied the same analysis to the statute and the policy because the language was "identical," which made it "reasonable to infer that State Farm intended to give [its policy] the same meaning given to the statute."  *Id.* at 194.  This language is also essentially identical to the policy language in the case at bar.

The *DeHaan* court concluded that Mr. DeHaan's injuries from the incident were not covered under the insurance policy.  It reasoned that "the shooting had no direct or substantial relation to the use of the vehicle," and "[t]he shooting broke the chain of use—even if the vehicle had been in the process of being used." *Id.* at 178-79.  The court added:

> [T]he "use" of the car must create the risk of injury.  To allow recovery under the uninsured motorist coverage, when there is no connection between the "use" of the vehicle and the injury inflicted, would be to require insurance companies to provide coverage for any imaginable incident occurring near a vehicle.  A result which is clearly beyond the scope of a statute which was enacted "to assure financial compensation to the innocent victims of motor vehicle accidents who are unable to recover from financially irresponsible uninsured motorists."

*Id.* at 179 (quoting *Johnson v. Nationwide Mut. Ins. Co.*, 388 Md. 82, 95 (2005)).  The court emphasized that the focus of its inquiry was "on the instrumentality of the injury," and it was "the handgun

and not the [car's] use, as it was intended to be used, which resulted in Mr. DeHaan's injuries." *Id.* at 182; *see also id.* at 183 ("[T]he language of the specific provision requires that the vehicle be *used*, i.e., be the instrumentality of the injury resulting from an event[.]").

In the case at bar, there is even less of a causal connection between Mr. Keys' injuries and the use of the uninsured motor vehicle than in *DeHaan*. Plaintiff argues that Mr. Keys' "injuries were directly related to the slamming of the doors of the uninsured vehicle." (ECF No. 42, at 4). She adds that "had there not been any banging of the two car doors, there would have not been a punch to [Mr. Keys'] head," and thus "the injury would not have happened as it did but for the use of the vehicle." (ECF No. 42, at 8).

Plaintiff's oversimplification leaves out several facts that separated the contact between the doors and Mr. Keys' injury. First, the two doors that bumped belonged to Ms. Byrd's car and Mr. Davis' car—neither Mr. Keys nor Mr. Hughes were directly involved in the portion of the incident that involved the cars.[6]

_____

[6] In her opposition to Defendant's motion, Plaintiff contends that Mr. Keys approached Ms. Byrd's car "to look at the damage and to get the vehicle owner's insurance information," (ECF No. 42, at 2), but she does not cite any materials in the record for this version of the facts. The testimony of Mr. Davis and Mr. Holmes clearly establish that Ms. Byrd and Mr. Davis had finished exchanging information by the time Mr. Keys confronted Ms. Byrd. (ECF No. 41-7, at 14, 116). A party asserting facts in response to a motion for summary judgment must support those facts by "citing to particular parts of materials in the record" or by

12

Second, several events that were completely unrelated to the use of the cars occurred between the bumping of the doors and Mr. Keys' fatal injury: Mr. Keys confronted Ms. Byrd, Mr. Hughes confronted Mr. Keys about "disrespecting" Ms. Byrd, Mr. Keys retreated and retrieved the baseball bat, and a struggle ensued.  Finally, even ignoring each of those intervening events, Mr. Holmes' punch "broke the chain of use," just like the shooting in *DeHaan* did.  Indeed, the "instrumentality of the injury" was indisputably Mr. Holmes' punch, which occurred outside the vehicles and was unrelated to their use.  Thus, there was no direct or substantial relationship between the use of the uninsured motor vehicle and Mr. Keys' injuries.[7]

Seeking to avoid this conclusion, Plaintiff argues that Mr. Hughes's use of his vehicle to "quickly drive away after injuring [Mr.] Keys" provides a causal connection.  (ECF No. 42, at 10). But the court in *DeHaan* explicitly rejected an interpretation of uninsured motorist policies that would allow "any victim of a crime

_____

"showing that the materials cited do not establish the absence or presence of a genuine dispute" as to those facts.  Fed.R.Civ.P. 56(c)(1).  Thus, the court will disregard Plaintiff's unsupported factual assertions.

[7] Other Maryland cases also support this conclusion. *See, e.g.*, *Wright v. Allstate Ins. Co.*, 128 Md.App. 694, 695, 701 (1999) (finding insufficient causal connection where couple was shot while in stopped car by man who emerged from vehicle parked next to them); *Webster v. Gov't Emps. Ins. Co.*, 130 Md.App. 59, 61, 67 (1999) (finding insufficient causal connection where driver and passenger were shot while attempting to drive away from carjacker).

whose assailant fled the scene of a crime in a car [to] seek recovery from his own insurer." *Id.* at 186 (quoting *Wright v. Allstate Insurance Co.*, 128 Md.App. 694, 699 (1999)). This interpretation would go far beyond the reasonable scope of the policy. The same goes for Plaintiff's reasoning that a causal connection existed based on the fact that all parties involved in the incident arrived at that parking lot in cars—this would expand car insurance companies' liability to almost any injury imaginable.

Plaintiff also cites several out-of-state cases where insurance companies were held liable for an insured's injuries when the insured was attacked while driving. *See Abercrombie v. Ga. Farm Bureau Mut. Ins. Co.*, 216 Ga.App. 602, 602 (1995) (involving an exchange of gunfire between two driving cars); *Cont'l W. Ins. Co. v. Klug*, 415 N.W.2d 876, 877 (Minn. 1987) (involving a shooting between two motorists where the insured was chased by his shooter in their respective cars); *Allstate Ins. Co. v. Gillespie*, 455 So.2d 617, 619 (Fla.App. 1984) (involving an assault through an insured motorist's window at a traffic light); *Cung La v. State Farm Auto. Ins. Co.*, 830 P.2d 1007, 1008 (Colo. 1992) (involving a shooting where the insured's car was boxed in by his assailants' cars and was shot as they all drove). The court need not analyze these cases because Maryland case law controls and provides clear guidance here. In any event, those cases are

14

clearly distinguishable from the present case because the driving of cars was integral to the attack and injury of the insured in each set of facts.  Because the undisputed facts establish that Mr. Keys' injuries did not arise out of the ownership, maintenance, or use of an uninsured motor vehicle, Plaintiff's UM breach of contract claim cannot survive Defendant's motion for summary judgment.

**IV.  Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment and for judgment on the pleadings will be granted.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
